# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

SHARON WEINSTOCK, et al.,

                Plaintiffs,

vs.                                       Civ. No. 17-cv-23202-RNS

MOUSA MOHAMMED ABU MARZOOK,

                Defendant.

_____/

## AMENDED MOTION FOR DEFAULT JUDGMENT
## WITH INCORPORATED MEMORANDUM OF LAW

    Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and the Court's Order on Default Judgment Procedure (DE 35), Plaintiffs hereby move for entry of default judgment[1] against Defendant, Mousa Mohammed Abu Marzook, and state as follows:

### INTRODUCTION

    This is a civil action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, arising from the shooting murder of U.S. citizen Yitzchak Weinstock by the terrorist group Hamas – Islamic Resistance Movement ("Hamas") on December 1, 1993, near Jerusalem. The plaintiffs are Yitzchak's estate, his mother, and siblings, and the estates of his late father and maternal grandparents.

    The defendant, Mousa Mohammed Abu Marzook ("Abu Marzook"), is a senior leader of

---

[1] As stated in Plaintiffs' Motion, *nunc pro tunc*, For Leave to Exceed the Page Limit (DE 45), due to an oversight by counsel, Plaintiffs' original Motion for Default Judgment exceeded the page limit set by Local Rule7.1(c). The Plaintiffs sought leave to exceed the page limit or in the alternative to file an Amended Motion for Default Judgment. To avoid unnecessarily burdening the Court, the Plaintiffs file this Amended Motion for Default Judgment and request that it be considered in lieu of the original Motion for Default.

Hamas who, while living in the U.S., carried out actions which enabled, facilitated and caused the terrorist attack in which Yitzchak was murdered. See DE 1 at ¶¶ 17-35, 44.

Abu Marzook was deported from the United States in May 1997. He was later indicted by a federal grand jury for the Hamas activities from which plaintiffs' claims against him arise, and was declared by the U.S. Department of Justice to be "a fugitive from justice." Id. at ¶¶ 31-33. *See also* U.S. Department of Justice Statement, August 20, 2004 ("Chicago and Washington, D.C., Area Men Among Three Indicted in Racketeering Conspiracy in U.S. to Finance Hamas Terror Abroad"), Declaration of Asher Perlin ("Perlin Decl.") at Exhibit A; Second Superseding Indictment in *U.S. v. Abu Marzook, et al.*, 03-cr-978 (N.D. Ill.), Perlin Decl. at Exhibit B.

Defendant Abu Marzook was served with process in this action as of April 13, 2018. *See* DE 32 at 2 (finding that "service was completed as of April 13, 2018"). However, Abu Marzook "failed to plead or otherwise defend" this action, Fed. R. Civ. P. 55(a), and after his time to do so expired, the Clerk of the Court entered default against Abu Marzook on June 12, 2018[2]. It is well established that a defendant's default is deemed an admission of all the well-pleaded allegations of the complaint (except those relating to damages), and that before entering default judgment the district court must also satisfy itself that it has subject-matter over the action and personal jurisdiction over the defendant, and that the complaint states a claim for relief. See e.g. *TracFone Wireless v. Anadisk LLC*, 685 F. Supp. 2d 1304, 1310 (S.D. Fla. 2010) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, as set forth in the operative complaint. With regard to the measure of damages, the allegations contained in the complaint are not considered admissions by virtue of the default; rather, the Court determines the amount and character of damages to be awarded.") (citations, quotation marks and brackets omitted); *Metro.*

---

[2] Defendant is not protected by the Servicemembers' Civil Relief Act, 50 U.S.C. § 3931. *See* Declaration of Asher Perlin and Exhibits C and D thereto.

*Life Ins. Co. v. Berger*, 2016 U.S. Dist. LEXIS 157218, at *4 (S.D. Fla. Nov. 10, 2016) ("defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief") (quoting *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005)); *Spy Optic Inc. v. Melbourne Wholesale, Inc.*, 2018 U.S. Dist. LEXIS 17084, at *6 (M.D. Fla. Jan. 31, 2018) ("Before entering default judgment, a court must ensure it has subject-matter jurisdiction over the case.*"); Proescher v. Sec. Collection Agency*, 2018 U.S. Dist. LEXIS 118039, at *12-13 (M.D. Fla. June 8, 2018) ("Before entering default judgment, a court should ensure it has personal jurisdiction over the defendant.").

As shown below, this Court has subject-matter over this case, and personal jurisdiction over Abu Marzook, and plaintiffs' allegations unquestionably state a claim for relief against Abu Marzook under ATA § 2333. Finally, plaintiffs have demonstrated their entitlement to damages with extensive evidence, as set forth in detail in the Proposed Order filed herewith and as supported by the numerous declarations filed on behalf of the Plaintiffs.

### A. The Court has Subject Matter Jurisdiction.

This Court has subject matter jurisdiction in this case. Plaintiffs bring this civil action for damages under a federal statute, 18 U.S.C. § 2333. Pursuant to 18 U.S.C. § 2338, the "district courts of the United States shall have exclusive jurisdiction over an action brought under this chapter." Thus, this Court has original subject matter jurisdiction under 28 U.S.C. § 1331.

### B. The Court has Personal Jurisdiction Over the Defendant

This Court has personal jurisdiction over Abu Marzook under Rule 4(k)(2) of the Federal Rules, which provides in relevant part that: "For a claim that arises under federal law, serving a summons … establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

Rule 4(k)(2) operates as a "national long-arm statute" which "permits a court to aggregate a foreign defendant's nationwide contacts" for jurisdictional purposes when the defendant does not show that he is subject to the personal jurisdiction of any individual U.S. state, provided that the plaintiff's claims "arise under federal law" and that the exercise of jurisdiction is consistent with Due Process. *Fraser v. Smith*, 594 F.3d 842, 848-49 (11th Cir. 2010). Thus, "[t]he applicable forum for purposes of Rule 4(k)(2) is the United States as a whole." *Barrocos of Fla., Inc. v. Elmassian*, 2012 U.S. Dist. LEXIS 64948, at *23 (S.D. Fla. May 9, 2012) (Scola, J.) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009)).

All of these conditions are met here. **First**, plaintiffs' claims are of course brought under federal law, i.e. ATA § 2333. **Second**, to defeat jurisdiction, it is a defendant's burden to show that he is subject to jurisdiction in another state's courts of general jurisdiction. *Barrocos*, at *20 ("Because Heng Lee has not identified any other state where it might be subject to personal jurisdiction, this Court is authorized to assume that Heng Lee is not amenable to jurisdiction in the courts of any state, and it may proceed under Rule 4(k)(2).") (citing cases). *See also e.g. Jackson v. Grupo Indus. Hotelero*, 2008 U.S. Dist. LEXIS 88922,

4

at *21 (S.D. Fla. Oct. 20, 2008) (same). By defaulting this action, Abu Marzook has failed to meet his burden under Rule 4(k)(2). *See Mwani v. Osama Bin Laden*, 417 F.3d 1, 11 (2005) (defaulted defendant forfeits opportunity to show amenability to jurisdiction in a particular state under Rule 4(k)(2)); *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 89 (D.D.C. 2006) ("Hamas … has not appeared to defend against this suit, and therefore it has not conceded to the jurisdiction of any state. Hence, the Court will presume that Hamas is 'not subject to the jurisdiction of the courts of general jurisdiction of any state[,]' under Rule 4(k)(2)); *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 71 (D.D.C. 2007) ("Rafsanjani has not entered an appearance in this case and thus has not conceded to jurisdiction in another state" under Rule 4(k)(2)); *Rubin v. Hamas*, 2004 U.S. Dist. LEXIS 20883, at *8 (D.D.C Sept. 27, 2004) (same).[3]

***Third***, the exercise of specific personal jurisdiction over Abu Marzook in this case is fully consistent with Due Process. In their complaint, plaintiffs allege in detail that during the years prior to Hamas' murder of Yitzchak Weinstock in December 1993, while Abu Marzook was domiciled and residing in the United States: (i) Abu Marzook helped found and served as the top leader of Hamas; (ii) as a matter of practice and policy Hamas advocated and used terrorist violence against civilians in Israel in order to achieve its goals; (iii) Abu Marzook endorsed and supported Hamas' use of terrorism; (iv) in order to assist Hamas to execute terrorist attacks and achieve its goals Abu Marzook sent millions of dollars to Hamas from

---

[3] In any event, plaintiffs and their counsel are unaware of any particular U.S. state in which Abu Marzook would be subject to personal jurisdiction. While, as discussed below, Abu Marzook engaged in extensive activities across the United States which give rise to specific personal jurisdiction in this case, we lack any basis to conclude much less assert that those multi-state activities were statutorily and constitutionally sufficient to give rise to personal jurisdiction in any individual state.

the U.S., organized a U.S.-based fund-raising and recruitment apparatus for Hamas, recruited individuals in the U.S. as Hamas operatives, and sent Hamas operatives from the U.S. to the West Bank and Gaza Strip, bearing instructions and funds supplied by Abu Marzook, for the purpose of organizing and funding Hamas terrorist attacks. See DE 1 at ¶¶ 17-28.

Plaintiffs also alleged, quoting the U.S. Justice Department, that:

> From 1988 until February 1993, while living in the United States, Marzook coordinated and financed the activities of Hamas within the United States and elsewhere, first from Louisiana and then from Northern Virginia. During that period, he traveled throughout the United States to meet with other American-based Hamas members, as well as foreign-based Hamas members traveling to the United States for organizational purposes. Abu Marzook additionally maintained constant phone contact with Hamas membership and leadership in the United States and abroad. During this time, he also maintained and shared numerous bank accounts through which substantial sums of money were transferred from bank accounts located outside the United States to other accounts within the United States … for ultimate disbursal to accounts and individuals outside the United States for use in furtherance of Hamas.

*Id*. at ¶ 32.

Plaintiffs further alleged in detail that Abu Marzook's U.S.-based activities enabled Hamas to carry out the terrorist attack in which Yitzchak Weinstock was murdered. *Id*. at ¶¶ 35, 44.

By defaulting this action, Abu Marzook has admitted the allegations of the complaint, including the allegations of the facts supporting personal jurisdiction. *See e.g. Faux Effects Int'l v. Selkirk Painting*, 2008 U.S. Dist. LEXIS 67094, at *4 (S.D. Fla. Sep. 2, 2008) (personal jurisdiction established on basis of factual allegations of the complaint that were deemed admitted by default); *Grange Indem. Ins. Co. v. Walton Transp*., 2016 U.S. Dist. LEXIS 174236, at *12 (M.D. Fla. Oct. 24, 2016) (same); *SEC v. Brennan*, 2013 U.S. Dist. LEXIS 196767, at *2-3 (S.D. Fla. Dec. 9, 2013) ("By virtue of its default, Defendant OPTZ is taken to admit the well-

pleaded allegations of fact Plaintiff's Complaint. Thus, the Court finds that Defendant committed the violations set forth in the Complaint. The Court also finds that it has personal jurisdiction over Defendant.") (citations omitted); *Zucaro v. Patel*, 2016 U.S. Dist. LEXIS 119864, at *10 (S.D. Ala. Sep. 6, 2016) ("The Amended Complaint … alleges sufficient facts, deemed admitted by the Defendants' default, establishing that personal jurisdiction and venue in this Court are proper.")[4].

Moreover, to further explain and prove the link between Abu Marzook's U.S.-based activities and the murder of the decedent, plaintiffs asked Mr. Arieh Dan Spitzen, a former senior Israeli military and intelligence officer who has broad expertise and experience relating to Hamas and its leadership, and who has repeatedly been qualified as an expert on Hamas in U.S. federal courts, to prepare an expert declaration on this topic. In his declaration, Mr. Spitzen explains in detail Abu Marzook's critical role in building Hamas' organizational, human and material infrastructure in the West Bank and Gaza Strip through his U.S.-based activities in the years prior to the murder, and concludes that "it is my expert opinion that without the extensive leadership, organizational and financial activities on behalf of Hamas initiated and conducted by Abu Marzook from the United States, Hamas would have had extremely limited organizational and operational capabilities, and it is very unlikely that the December 1, 1993 attack would have occurred." Declaration of Arieh Dan Spitzen ("Spitzen Decl.") at ¶ 30.

Mr. Spitzen also quotes numerous other Hamas experts who have similarly concluded that Abu Marzook's U.S.-based activities were crucial to Hamas' operational capabilities. *See*

---

[4] Plaintiffs note that their allegations are also supported by the criminal allegations against Abu Marzook by the U.S. government (*see* Perlin Decl. at Exs. A and B), and by the numerous federal court decisions that have had occasion to discuss Abu Marzook and his activities in the U.S. *See e.g. Marzook v. Christopher*, 924 F. Supp. 565 (S.D.N.Y. 1996); *Abu Marzook v. Christopher*, 1996 U.S. Dist. LEXIS 15007 (S.D.N.Y. Oct. 9, 1996); *In re Grand Jury Subpoena of Elbarasse*, 1998 U.S. Dist. LEXIS 19568, at *5-6, *17-19 (S.D.N.Y. Dec. 14, 1998); *U.S. v. Alwan*, 279 F.3d 431, 435 (7th Cir. 2002); *U.S. v. One 1997 E35 Ford Van*, 50 F. Supp. 2d 789, 794, 800-803 (N.D. Ill. 1999); and *U.S. v. El-Mezain*, 664 F.3d 467, 485-489, 495, 501, 504, 527-528 (5th Cir. 2011).

*e.g. id*. at ¶ 27 (quoting Hamas experts who concluded that "Abu Marzook restored to Hamas its operational ability" and that Abu Marzook provided "financial resources vital to renewal of Hamas' public and violent activity."); and at ¶ 29 (quoting conclusion of former U.S. Treasury terrorism finance analyst and Hamas expert that "Marzook's operation was critical to the group's survival.").

Thus, Abu Marzook took actions in the United States, which resulted in the injuries to the plaintiffs. This is therefore a case for exercise of specific jurisdiction. To determine whether the exercise of specific jurisdiction conforms with due process the Eleventh Circuit applies a three-part test. "First, we consider whether the plaintiffs have established that their claims 'arise out of or relate to' at least one of the defendant's contacts with the forum. Second, we ask whether the plaintiffs have demonstrated that the defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state. If the plaintiffs carry their burden of establishing the first two prongs, we next consider whether the defendant has made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Waite v. AII Acquisition Corp.*, __ F.3d ___, 2018 U.S. App. LEXIS 23772, at * 10 (11th Cir. Aug. 23, 2018) (citations, brackets, and notes of modification to quotations omitted).

These criteria are easily satisfied here: **First**, plaintiffs' claims "arise out of or relate to" Abu Marzook's activities in the United States. In this Circuit, a tort "arises out of or relates to" the defendant's activities in the jurisdiction if they are a "but-for" cause of the tort. *Waite* at *11-14. As discussed in the Spitzen Declaration, Abu Marzook's U.S.-based activities were indeed a "but-for" cause of plaintiffs' injuries. **Second**, Abu Marzook obviously "purposefully availed" himself of the privilege of conducting activities within the United States: he carried out his activities on behalf of Hamas within the United States, while he was domiciled and resided in the

United States.  ***Third***, the exercise of jurisdiction over Abu Marzook in this case would certainly not violate "traditional notions of fair play and substantial justice." *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 174 (2d Cir. 2013) (exercise of specific personal jurisdiction in ATA action against Lebanese bank which wired terror funds through New York "would not offend principles of fair play and substantial justice."); *Strauss v. Crédit Lyonnais*, 175 F. Supp. 3d 3, 27 (E.D.N.Y. 2016) (same, in respect to French bank); *Weiss v. Nat'l Westminster Bank*, 176 F. Supp. 3d 264, 284 (E.D.N.Y. 2016) (same, in respect to British bank); *Freeman v. HSBC Holdings PLC*, 2018 U.S. Dist. LEXIS 127289, at *194 (E.D.N.Y. July 27, 2018) (same).

Notably, the cases above involved foreign banks which wired alleged terror funds through the United States; all the more so where, as here, the defendant carried out the activities in question while actually physically present in the United States. Abu Marzook was obviously on full notice that his actions could subject him to the jurisdiction of the U.S. courts, and cannot reasonably be surprised to find himself a defendant in this action.

Finally, there are "important U.S. interests at stake" in this action because "the ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013). For this reason, too, "traditional notions of fair play and substantial justice" are not obstacles to the exercise of specific personal jurisdiction in this case.

In sum, this Court can and should exercise specific personal jurisdiction over Abu Marzook pursuant to Rule 4(k)(2).

## C. The Complaint States a Claim under ATA § 2333

Plaintiffs' allegations easily state a claim under ATA § 2333, which provides that: "Any national of the United States injured in his or her person, property, or business by reason of an

act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a).

Plaintiffs' standing to sue as U.S. nationals or the survivors of U.S. nationals is plead specifically in the complaint at ¶¶ 8-16, and the allegations relating to the fact that they were injured by reason of a terrorist attack are set forth throughout the complaint[5].

The phrase "act of international terrorism" used in § 2333(a) is defined in ATA § 2331 as "activities that (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." 18 U.S.C. § 2331(1).

The allegations regarding defendant Abu Marzook's conduct that are set forth throughout the complaint, and particularly at ¶¶ 47-53 thereof, amply satisfy each of these elements of "international terrorism" as defined in ATA § 2331(1).

**D. The Plaintiffs are Entitled to Damages Awards as Specified in the Proposed Order and as Evidenced by the Supporting Declarations and Other Exhibits Filed Herewith.**

Section 2333 of the ATA provides: Any national of the United States injured in his or her

---

[5] The capacity of certain plaintiffs to sue on behalf of the estates of the decedents, and on behalf of plaintiff Geula Weinstock, is addressed in the Declaration of Jeremy Stern.

person … by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.18 U.S.C. § 2333(a). Section 2333 allows actions by nationals of the United States, their estates, survivors, or heirs, which includes all of the Plaintiffs herein. Even Dov Weinstock, who was not a United States citizen, is included among those permitted to bring claims under Section 2333. As Yitzchak's father, Dov was a "survivor" of a United States national who was murdered in the terrorist attack. The ATA "contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute." *Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 271 (D.R.I. 2004). *See also*, *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006)("it is sufficient for plaintiffs to allege a familial relationship, such as that of child, parent, spouse, or sibling of a U.S. national.").

Further, U.S. nationals who are the relatives of a person killed by terrorists are themselves "victims of international terrorism." *Estates of Ungar*, 304 F. Supp. 2d at 263. *See also Biton v. Palestinian Authority*, 310 F. Supp. 2d 172, 182 (D.D.C. 2004) (U.S. citizen may assert direct claim under ATA for murder of family member, irrespective of decedent's nationality). Similarly, surviving U.S. national grandparents like Rabbi and Mrs. Dolgin, who shared an unusually close relationship with Yitzchak, are considered to be victims of international terrorism and are entitled to damages under the ATA. *See e.g., Lelchook v. Commerzbank*, 2011 U.S. Dist. LEXIS 106305, at *5 (S.D.N.Y. Aug. 1, 2011) ("Nothing in the statute limits the ability of [survivors] to sue; as long as the proximate cause of the injury is alleged to be 'by reason of an act of international terrorism,' *id*., the claim may be brought.");

11

*Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017) (awarding damages to grandparents for terrorist killing of granddaughter under the terrorism exception to the Foreign Sovereign Immunities Act).

Section 2333 does not specify the nature of damages that can be recovered. However, courts construing this provision have found that it extends to plaintiffs the full array of tort remedies, including both "the broadest range of economic damages" as well as solatium and other non-economic damages. See *Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 266-67 (D.R.I. 2004); *Lelchook*, 2011 U.S. Dist. LEXIS 106305, at *6 (S.D.N.Y. 2011) (collecting cases). Thus, the estate of Yitzchak Weinstock is entitled to recover economic damages for lost earnings; and the remaining plaintiffs may recover damages for the severe emotional injuries they suffered, otherwise known as solatium damages. *See id*. Solatium damages are awarded where, as here, "extreme and outrageous conduct has caused grief and anguish to plaintiffs closely related to a victim of terrorism. Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror." *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 273 (D.D.C. 2003).

Courts addressing the availability and amount of solatium damages in terrorism cases have traditionally looked to prior similar cases awarding solatium or emotional damages. *Estates of Ungar*, 304 F. Supp. 2d at 270-77; *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 8:09-cv-2308-T-26MAP, 2010 U.S. Dist. LEXIS 149212 (M.D. Fla. June 14, 2010). Moreover, courts considering damages in cases decided under the Antiterrorism Act, 18 U.S.C. §§ 2331, et seq. have considered damages awards in other terrorism cases, including those decided under the related terrorism exception to the Foreign Sovereign Immunities Act

("FSIA"), 28 U.S.C. § 1605A (and the former terrorism exception 1605(a)(7) for cases decided prior to 2008). *See e.g., Estates of Ungar*, 304 F. Supp. 2d at 263; *Rubin v. HAMAS--Islamic Resistance Movement*, 2004 U.S. Dist. LEXIS 20883 (D.R.I. 2004); *Stansell v. Revolutionary Armed Forces of Colom.* (*FARC*), No. 8:09-cv-2308-T-26MAP, 2010 U.S. Dist. LEXIS 149212 (M.D. Fla. June 14, 2010).

Applying this methodology, courts have formulated a widely-accepted framework for calculations of damages awarded to victims of international terrorism. In *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006), the court surveyed past terrorism awards in the context of deceased victims of terrorism, and found that parents of those killed in terrorist attacks typically received damages awards of $5 million and siblings received $2.5 million. The court also specified "baseline" amounts awarded to other relatives, such as spouses. *See id*. In *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017), the court awarded $2.5 million in compensatory damages to each of the four grandparents of a baby killed in a terrorist attack. The court found that the grandparents suffered greatly from witnessing the effects of the murder of the baby on the baby's parents. *Id*. In *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010), the court observed that the *Heiser* framework, which bases terrorism damages awards upon typical prior terrorism awards is "an appropriate measure of damages for the family members of victims." The D.C. Circuit recently agreed that that *Heiser* framework reflects reasonable baseline awards, and reaffirmed that "past solatium awards from comparable cases are appropriate sources of guidance for district courts." *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 361-62 (D.C. Cir. 2018). The *Fraenkel* court held that while *Heiser* is not binding on other courts, it provides a "useful reference point" to which courts may adhere or depart upwards or downwards in their damages awards, depending upon the

circumstances of the case and the discretion of the judge. 892 F.3d at 351.

In support of this Amended Motion, Plaintiffs submit a Proposed Order, supported by verified declarations and other exhibits documenting all facts necessary to support a damages award and entry of judgment herein.

Courts hearing terrorism cases routinely accept verified or sworn declarations as competent evidence to establish damages. *See e.g., Bluth v. Islamic Republic of Iran*, 203 F. Supp 3d 1, 17 (D.D.C. 2016), citing *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012) and *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002); *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 8:09-cv-2308-T-26MAP, 2010 U.S. Dist. LEXIS 149212 (M.D. Fla. 2010) (court may forego a hearing where the plaintiffs submit detailed affidavits describing the nature and extent of their damages).

The declarations submitted by the Plaintiffs provide detailed descriptions of their damages, both as to the economic losses suffered by the Estate of Yitzchak Weinstock and as to the emotional and solatium damages suffered by the remaining plaintiffs.

Accordingly, the Plaintiffs request that the Court award them compensatory damages in what can, unfortunately, be described as the "standard" amounts established by other courts. The Court should award $5 million each to Sharon Weinstock and the Estate of Dov Weinstock; and $2.5 million each for Yitzchak's siblings and maternal grandparents.

The Estate of Yitzchak Weinstock should be awarded $1,291,000 in lost future earnings, as established by the Plaintiffs' expert economic witness, Mr. Mark Berenblut.

Finally, the above amounts should be trebled in accordance with 18 U.S.C. § 2333(a).

**WHEREFORE**, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment and enter judgment in accordance with this Motion and the Proposed Order and Judgment submitted herewith.

Respectfully submitted October 9, 2018

        Plaintiffs, by their attorney,

By:   /s/ Asher Perlin
Asher Perlin, Esq.
Florida Bar No. 0979112
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel. 954-284-0900 ext. 102
Fax. 954-284-0747
Email: asherperlin@gmail.com

# **CERTIFICATION**

      I hereby certify that a true and correct copy of the foregoing was sent to Defendant on October 9, 2018, by emailing the foregoing Amended Motion and Memorandum for Default Judgment, along with the Original Motion and Memorandum for Default Judgment (DE 44), the proposed Order and the proposed Judgment, and all supporting exhibits and documentation to the five email addresses identified and used for service of the summons and complaint in this action. This delivery accords with the Court's paperless Order dated July 9, 2018 (DE 37).

       /s/ Asher Perlin

## **SERVICE LIST**

Hamas
Media@hamas.ps

Dr. Sami Abu Zuhri
samy@hamas.ps

Dr. Salah al Bardawil
salah@hamas.ps

Fawzi Barhoum
Fawzi@hamas.ps

Hossam Badran
husam@hamas.ps