## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 17-cv-23202-SCOLA

SHARON WEINSTOCK, individually,
as the legal guardian of plaintiff Geula Weinstock,
and as personal representative of the Estates of
Yitzchak Weinstock, Dov Weinstock,
Rabbi Simon Dolgin, and Shirley Dolgin;
MOSHE WEINSTOCK, individually,
as the legal guardian of Geula Weinstock,
and as personal representative of the Estates of
Yitzchak Weinstock and Dov Weinstock;
GEULA WEINSTOCK;
ARYEH WEINSTOCK;
CHAIM WEINSTOCK;
ESTATE OF YITZCHAK WEINSTOCK;
ESTATE OF DOV WEINSTOCK;
ESTATE OF RABBI SIMON DOLGIN; and
ESTATE OF SHIRLEY DOLGIN,

       Plaintiffs,

v.

MOUSA MOHAMMED ABU MARZOOK,
(a/k/a "Musa Abu Marzook," "Mousa Abu Marzouk,"
"Musa Abu Marzouk," "Abu Omar," or "Abu Umar"),

       Defendant.

_____/

### MOTION FOR PROTECTIVE ORDER
### AND MEMORANDUM IN SUPPORT THEREOF

The U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"), a non-party to this civil action, by and through the undersigned Assistant United States Attorney, and pursuant to Federal Rule of Civil Procedure 26(c), hereby respectfully moves this Court for the entry of a protective order authorizing and protecting disclosure of certain information responsive to a third-party subpoena issued by Plaintiffs to OFAC in connection with the above-captioned case.

**BACKGROUND INFORMATION**

On August 24, 2017, Plaintiffs filed this action against Mousa Mohammed Abu Marzook ("Defendant") under the Antiterrorism Act, 18 U.S.C. § 2333, for damages arising from a terrorist shooting attack executed by Hamas, on December 1, 1993 near Jerusalem, Israel that resulted in the death of Yitzchak Weinstock. *See* Compl. (D.E. 1) ¶ 1. This Court entered judgment for Plaintiffs against Defendant on April 15, 2019. Final Default J. (D.E. 54). Among other things, the Court's decision awarded Plaintiffs $78,873,000.00 in damages against Defendant. *Id*. at 1.

On or about January 11, 2023, Plaintiffs issued a third-party subpoena to OFAC that, in conjunction with its attached exhibit (collectively the "January 2023 Subpoena"), identified information requested by Plaintiffs ostensibly for use in connection with collecting the judgment issued by this Court. The January 2023 Subpoena is attached hereto as Exhibit "A." The January 2023 Subpoena seeks the following information:

> As of the date of production and based upon the most current information available, a list of persons holding assets that are blocked due to a nexus with Mousa Mohammed Abu Marzook, ███████████ (a.k.a. Marzuk, Musa Abu; Abu-Marzuq, Dr. Musa; Marzook, Mousa Mohamed Abou; Abu-Marzuq, Sa'id; Abu-'Umar; Marzouk, Musa Abu) (hereinafter: "Abu Marzook") together with the amounts held at each such financial institution rounded down to the nearest $1,000.

Ex. A.

OFAC has agreed to provide Plaintiffs with certain information responsive to the January 2023 Subpoena and has no objection to the use of that information in judgment collection efforts in relation to this case; however, OFAC cannot release the information unless and until a protective order is entered to ensure that disclosure of the information to Plaintiffs does not violate relevant federal law.[1]

---

[1]     OFAC takes no position as to whether any assets identified in or because of OFAC's disclosures are or will be available for attachment or any other purposes for which Plaintiffs deem to use the information in this action. Nor should OFAC's issuance of a response to Plaintiffs'

**LEGAL STANDARD**

A protective order may be entered upon a showing of "good cause." Fed. R. Civ. P. 26(c). This standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999). "Protective orders may 'deny discovery completely, limit the conditions, time, place, or topics of discovery, or limit the manner in which the confidential information is to be revealed.'" *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 43 (D.D.C. 2017) (quoting *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006)).

In general, a court's decision regarding what limits to place on production of requested information and records through use of "a Rule 26 protective order rests on a balancing of several factors," including "the requester's need for the information from this particular source, its relevance to the litigation at hand, . . . and the harm which disclosure would cause to the party seeking to protect the information." *U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 27–28 (D.D.C. 2002) (citing *Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996)); *see Tavoulareas v. Piro*, 93 F.R.D. 24, 28-29 (D.C. 1981) (granting third-party a protective order based on finding that "the protective order proposed by Mobil constitutes the best means of resolving the conflict between the legitimate need of [a party] for prompt, thorough disclosure and the genuine interest of Mobil in preserving the confidentiality of sensitive corporate documents").

---

subpoena be interpreted as waiver, compromise, or concession of any position, argument, or defense that the United States has available to it in future proceedings held in connection with this action, including but not limited to any proceeding or action regarding the attachability of assets.

## ARGUMENT

The Court should grant this motion and enter the proposed protective order, attached hereto as Exhibit "B," because, without such an order, the release by OFAC of certain information to Plaintiffs could potentially constitute a violation of the Trade Secrets Act, 18 U.S.C. § 1905. Generally, "the Trade Secrets Act . . . prohibits Government personnel from disclosing several types of confidential information unless 'authorized by law.'" *Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008). Under the terms of the Trade Secrets Act, "an officer or employee of the United States or of any department or agency thereof . . . shall be fined . . . , or imprisoned . . . , or both; and shall be removed from office or employment" if the officer or employee

> publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law.

18 U.S.C. § 1905 (emphasis added). The language of the Trade Secrets Act has been described as "exceedingly broad" and "oceanic." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1140 (D.C. Cir. 1987). When interpreting the scope of the statute, the D.C. Circuit has described the Trade Secrets Act as "'encompass[ing] virtually every category of business information likely to be in the files' of an agency" and "cover[ing] practically any commercial or financial data collected by any federal employee from any source in performance of the duties of his or her employment." *Id*. (quoting *Chrysler Corp. v. Schlesinger*, 565 F.2d 1172, 1186 (3d Cir. 1977)).

An agency or federal employee can avoid liability for disclosing information protected by the Trade Secrets Act only if the disclosure of the information is "provided by law." *See* 18 U.S.C. § 1905. Thus, a disclosure generally prohibited by the Trade Secrets Act does not violate the statute if the disclosure is made "pursuant to a lawfully issued judicial order." *United States v. Liebert*, 519 F.2d 542, 546 (3d Cir. 1975). Notably, a subpoena issued under Federal Rule of Civil Procedure 45 does not satisfy this standard even though such a subpoena is "signed by the clerk of the court, is issued in the name of the court, and carries with it the contempt power." *Doe v. DiGenova*, 779 F.2d 74, 81 (D.C. Cir. 1985); *see also id*. at 85 (holding that "subpoenas" do not permit government disclosures prohibited by the Privacy Act because subpoenas "do not qualify as 'order[s] of a court of competent jurisdiction' under [the Privacy Act], unless they are specifically approved by a court"). Rather, federal courts have explained "that the Trade Secrets Act 'seems to embody a congressional judgment that private commercial and financial information should not be revealed by agencies that gather it, absent a conscious choice in favour [*sic*] of disclosure <u>by someone with power to impart the force of law to that decision</u>.'" *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 228–29 (D.D.C. 2015) (emphasis in original) (quoting *CNA Fin. Corp.*, 830 F.2d at 1141).

Information protected by the Trade Secrets Act may be disclosed in compliance with a court's order to disclose such information but the agency-defendant disclosing the information may also seek a protective order to limit the use or dissemination of the trade secret-related information so that such disclosures do not violate the Trade Secrets Act. *See Agility Pub.*, 110 F. Supp. 3d at 229 (holding that agency-defendant was required to produce records despite the information being protected from disclosure by the Trade Secrets Act and prohibited from disclosing and explaining that "this result need not leave the documents completely unprotected"

because the agency was "free to seek a protective order that 'require[s] that [the] trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way'"); *Tavoulareas*, 93 F.R.D. at 28, 29 (granting third-party a protective order "designed to preclude the free use or dissemination of any confidential . . . documents" and finding that "the protective order proposed by Mobil constitutes the best means of resolving the conflict between the legitimate need of [a party] for prompt, thorough disclosure and the genuine interest of Mobil in preserving the confidentiality of sensitive corporate documents").

In this case, because the disclosures to be made by OFAC in response to the January 2023 Subpoena may contain information that the Trade Secrets Act generally prohibits OFAC from disclosing and Plaintiffs have professed a need for the information to aid in their ability to obtain satisfaction of the judgment entered by this Court against Defendant, OFAC requests this Court enter the accompanying proposed protective order that (i) permits OFAC to issue a response to the subpoena that contains information otherwise protected from disclosure under the Trade Secrets Act; and (ii) sets limitations on the further disclosure and use of the information provided by OFAC to Plaintiffs in response to the subpoena.[2]

---

[2]     Protective orders similar to the order proposed in this case have been entered in several other cases involving third-party subpoenas directed to OFAC. *See, e.g., Warmbier v. Democratic People's Republic of Korea*, Civ. A. No. 18-0977 (BAH) (D.D.C. July 26, 2019) (D.E. 34) (granting OFAC's motion for protective order and entering protective order); *Malina v. Syrian Arab Rep.*, Civ. A. No. 11-0093 (JMF) (D.D.C. Nov. 5, 2018) (D.E. 64) (granting OFAC's motion for protective order and entering protective order); *Thuneibat v. Syrian Arab Rep.*, Civ. A. No. 12-0020 (BAH) (D.D.C. Nov. 1, 2018) (D.E. 40) (granting OFAC's motion for protective order and entering protective order); *Baker v. Great Socialist People's Libyan Arab Jamahiriya*, Civ. A. No. 03-0749 (GMH) (D.D.C. Feb. 20, 2018) (D.E. 148) (granting OFAC's motion for protective order and entering protective order).

WHEREFORE, for the foregoing reasons, OFAC respectfully requests that the Court grant this motion and enter the proposed protective order.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3) for the Southern District of Florida, the undersigned certifies that she conferred with Plaintiffs' counsel, Asher Perlin, who does not oppose the relief sought in this motion, via e-mail on January 22, 2023.

**Respectfully submitted,**

**MARKENZY LAPOINTE**
**UNITED STATES ATTORNEY**

**By: _Amy L. Soto_**
      AMY L. SOTO
      Assistant United States Attorney
      Florida Bar No. 124858
      99 N.E. 4th Street, Suite 300
      Miami, Florida 33132
      Tel.: (305) 961-9368
      Email: Amy.Soto@usdoj.gov

*Counsel for U.S. Department of Treasury's Office of Foreign Assets Control*